

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 4 2010

David J. Bradley, Clerk of Court

UNSEALED
PER ARREST

| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | |
| FERNANDO PABLO VILLARREAL | § | |
| CANTU | § | CRIMINAL NO. |
| ROBERT WAYNE SEE | § | |
| JOVENAL MIRANDA CRUZ | § | **H-10- 179** |
| a.k.a. JERRY M. CRUZ | § | |
| JORGE EDUARDO GONZALEZ | § | |
| PIZANA a.k.a. EDUARDO PIZANA | § | |
| JAVIER HERIBERTO HINOJOSA | § | |
| JOEL VILLALON | § | |

## CRIMINAL INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT ONE

## I.    INTRODUCTION

At all times material to this Indictment:

### A.    Defendants

1.    FERNANDO PABLO VILLARREAL CANTU oversaw substantial

business interests involving the grain and cattle industries in both Mexico and the United

States.  VILLARREAL CANTU was the president of Grupo Empresarial Logistik, a

group of companies in Mexico which included Inter-Grain, S.A. de C.V., Granos

Rolados, and Operadora de Inmuebles San Pedro.  VILLARREAL CANTU was also

1

associated with several other corporations in Mexico involved in the grain business

including Empacadora VI-BA, Compania Ganadera VI-BA, Carnes VI-BA, Internacional

Grain SA de CV, Central de Granos de la Laguna and Saldana y Gomez Granos y

Semillas. In addition,  VILLARREAL CANTU, as early as 1988, was in the grain

business in the United States.  He operated South Texas Grain in Brownsville, Texas.  In

1998, U.S.A. Meat and Grain Co., Inc. came into existence and took over the operation of

South Texas Grain and began exporting grain from the United States to VILLARREAL

CANTU's company Internacional Grain SA de CV in Mexico.  VILLARREAL

CANTU's influence extended to six additional export companies established in the

United States; U.S.A. Grain Co., U.S.A. Meat and Grain Co., Inc., Virgo Commodities

Corp., Mid-Valley Grain Co., Alamo Feeders, Inc. and The Laredo Grain Company.

2.     ROBERT WAYNE SEE worked in the grain business in Houston,

Texas.  SEE worked at Vista Trading, a division of SK Global America, as the Export

Sales Manager from approximately 1994 to March 2004.  Vista Trading engaged in the

buying and selling of agricultural commodities such as corn, soybeans, and wheat. Vista

Trading exported grain on occasion and also they facilitated exports of grain on behalf of

five of the export companies, U.S.A. Grain Co., U.S.A. Meat and Grain Co., Inc., Virgo

Commodities Corp., Mid-Valley Grain Co., and Alamo Feeders, Inc.  Each of these

export companies and their respective Mexican import companies are affiliated in some

manner with VILLARREAL CANTU. After the 2003 bankruptcy of SK Global, a new

corporation, Vista Exports,  was utilized by SEE and other conspirators to purchase grain

on behalf of the six export companies U.S.A. Grain Co., U.S.A. Meat and Grain Co., Inc.,
Virgo Commodities Corp., Mid-Valley Grain Co., Alamo Feeders, Inc. and The Laredo
Grain Company. On September 22, 2003, the same day Vista Exports was incorporated,
SEE incorporated Vista Grain Corporation. Vista Grain was an entity through which SEE
received funds from Inter-Grain and Internacional Grain SA de CV, both of Mexico. SEE
also obtained proceeds provided by or on behalf of VILLARREAL CANTU through
JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, or through entities established
by CRUZ or one of his family members. SEE utilized a bank account in the name of
Cavalier Consulting to receive some of these proceeds. Corvus International Corporation
was incorporated by SEE on June 25, 2003. Between mid July 2003 and mid August
2004, importer Internacional Grain SA de CV, importer Saldana y Gomez Granos y
Semillas, and importer Central de Granos sent approximately $1,304,298.00 to the Corvus
International Corporation bank account.

       3.     JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, was a
Vice President in Houston at Banque Nationale de Paris, which subsequently changed its
name to BNP Paribas. He was the Manager of Trade Finance in the area of General
Corporate Banking. In that position, CRUZ was instrumental in establishing lines of
credit through the BNP Paribas approval process. Further, he approved individual loans
under those lines of credit, which loans were guaranteed by the United States government
under U.S. Department of Agriculture (USDA) export programs. As part of his
responsibilities at BNP Paribas, CRUZ was expected to develop new clients and business

3

volume under the USDA programs as well as increase business with existing clients. CRUZ obtained lines of credit, and expanded those lines of credit for five of the six export companies doing business with Vista Trading and Vista Exports. CRUZ received proceeds from VILLARREAL CANTU through the movement of funds through various bank accounts in the United States, Mexico and the Philippines. Entities utilized by CRUZ to receive as well as hide and disguise funds funneled by or on behalf of VILLARREAL CANTU and other conspirators include, BST Consulting, Aruca Group, LLC, Harlingen Grain and Corvus International Corporation.

4. JORGE EDUARDO GONZALEZ PIZANA, a.k.a EDUARDO PIZANA was a representative of U.S.A. Grain, U.S.A. Meat and Grain, and Alamo Feeders, Inc., all of which participated in the USDA's Supplier Credit Guarantee Program. In addition, GONZALEZ participated in the activities of Mid-Valley Grain, Co. GONZALEZ incorporated Vista Exports, an entity which held itself out as a supplier of United States agricultural commodities to the six export companies. He was also a representative of Harlingen Cattle Company, a business whose bank accounts were used to move money and purchase real estate.

5. JAVIER HERIBERTO HINOJOSA incorporated Virgo Commodities Corp. and applied to USDA for guarantees under the Supplier Credit Guarantee Program. HINOJOSA also was instrumental in establishing Mid-Valley Grain Co., Alamo Feeders, Inc. and The Laredo Grain Company which were companies utilized

4

to obtain USDA loan guarantees under the Supplier Credit Guarantee Program.

6.     JOEL VILLALON was employed in the grain business in the Rio Grande Valley.  VILLALON worked for VILLARREAL CANTU at South Texas Grain and subsequently functioned as a manager at both U.S.A.Grain Co. and U.S.A. Meat and Grain Co., Inc. As manager, VILLALON had signature authority on bank accounts for both corporate entities. As the Export Manager at U.S.A. Meat & Grain Co., Inc., VILLALON submitted documents to BNP Paribas in support of draw requests on U.S.A. Meat & Grain Co., Inc.'s  line of credit.

## B.     <u>Supplier Credit Guarantee Program</u>

The Supplier Credit Guarantee Program (hereinafter SCGP) was an export credit guarantee program administered by the USDA's Foreign Agricultural Service. The program was designed to help ensure that credit was available to finance commercial exports of U.S. agricultural products to eligible countries, while providing competitive credit terms to buyers. Under this program, the USDA's Commodity Credit Corporation (hereinafter CCC) reduced the financial risk to exporters by guaranteeing a portion of the export value of the exported commodity, up to 65%, due from foreign importers under financing arrangements of up to 180 days. Under the program, the direct credit extended by the exporter to the importer had to be secured by a promissory note signed by the importer.

5

1.    PARTICIPATION

To be eligible to participate in the SCGP, an exporter of United States

agricultural commodities was not permitted to be directly or indirectly owned or

controlled by the importer, or a person(s) or entity(ies) which also owned or controlled

the importer. Further, the exporter was not eligible to participate in the SCGP if the

exporter directly or indirectly owned or controlled the importer. To qualify, the exporter

must have negotiated the terms of the export credit sale with the unrelated importer to

export an eligible U.S. commodity.  Once a firm sale existed, qualified exporters had to

apply for a payment guarantee from USDA before the date of the export and were

required to pay a fee for the guarantee. To qualify to participate in the SCGP, the exporter

was required to have a business office in the U.S. and could not have been debarred or

suspended from participating in any U.S. government program.

2.    FINANCING

To obtain financing under the SCGP, the importer of the US agricultural

commodity had to issue a dollar-denominated promissory note in favor of the exporter.

The exporter could negotiate an arrangement to be paid, in full or in part, by assigning to

a financial institution the right to the proceeds that might become payable under the

CCC's guarantee.  If the exporter assigned the guarantee to the financial institution then

the exporter would also provide transaction-related documents required by the financial

institution, including a copy of the Evidence of Export report, which also had to be

provided to the CCC. The exporter was required to certify that the information provided in the Evidence of Export report was true and correct and that all the requirements set forth in section 1493.480 of the SCGP regulations had been or would be met. Prior to funding, the financial institutions required a copy of the Mexican Customs Pedimento which reflected the commodity had entered Mexico on a specific date.

3.    DEFAULTS

In the event an importer failed to make any payment as agreed under the payment guarantee, the exporter or the financial institution to whom the exporter had assigned the guarantee, was required to submit a notice of default to the CCC. The exporter was required to obtain documentation demonstrating that the commodity arrived in the eligible country and to maintain all transaction documents for five years from the date of completion of all payments.

C.    **Export Companies**

1.    U.S.A. Grain Co. was a Texas corporation and JORGE EDUARDO GONZALEZ PIZANA held the position of Secretary within the corporation. U.S.A. Grain Co.'s principal place of business was Brownsville, Texas. U.S.A. Grain Co. participated in the SCGP beginning in 1998 until the first default by their client, Mexican import company Empacadora VI-BA, on or about June 20, 2005. U.S.A. Grain Co. had assigned to Sterling Bank the right to the proceeds that might become payable under the CCC's guarantee purchased for their exports to Empacadora VI-BA.

7

2.     U.S.A. Meat and Grain Co., Inc. was a Texas corporation and
JORGE EDUARDO GONZALEZ PIZANA served as the treasurer and subsequently as
the president. The principal place of business for U.S.A. Meat and Grain Co., Inc. was
Brownsville, Texas. U.S.A. Meat and Grain Co., Inc. assigned to BNP Paribas the right to
the proceeds that might become payable under the CCC's guarantees they purchased for
their exports to the Mexican importer, Internacional Grain SA de CV from 1998 until the
first default on that line of credit on or about April 6, 2005.

3.     Virgo Commodities Corp. was incorporated in Texas on or about
June 7, 1999 by JAVIER HERIBERTO HINOJOSA, who also served as the president,
vice president and secretary. The principal place of business for Virgo Commodities
Corp. was Brownsville, Texas. Between 1999 and March 2003, Virgo Commodities Corp.
obtained financing under the SCGP through CRUZ at BNP Paribas Bank.  Beginning in
March of 2003, Virgo Commodities Corp. assigned to JP Morgan Chase Bank the right to
the proceeds that might become payable under the CCC's guarantees purchased for their
exports to the Mexican importer, Saldana y Gomez Granos y Semillas until the first
default on that line of credit on or about May 17, 2005.

4.     Mid-Valley Grain Co. was incorporated in Texas on November 9,
1999. JAVIER HERIBERTO HINOJOSA, using funds from the Virgo Commodities
Corp.'s bank account, paid for the incorporation of Mid-Valley Grain Company.  The
principal place of business for Mid-Valley Grain Co. was Harlingen, Texas.  Mid-Valley

Grain Co. assigned to BNP Paribas the right to the proceeds that might become payable under the CCC's guarantees purchased for their exports to the Mexican importer, Central de Granos de La Laguna S.A. de C.V. from 2000 until the first default on that line of credit on or about April 11, 2005.

        5.      Alamo Feeders, Inc. was incorporated in Texas on January 22, 2001, in the name EDUARDO PIZANA by JORGE EDUARDO GONZALEZ PIZANA. GONZALEZ was the president of Alamo Feeders, Inc. The principal place of business for Alamo Feeders, Inc. was San Antonio, Texas. Loans guaranteed under the SCGP were obtained by Alamo Feeders, Inc. through CRUZ at BNP Paribas Bank from 2001 until the first default on this line of credit on or about April 4, 2005.

        6.      The Laredo Grain Company was incorporated August 9, 2004, by JAVIER HERIBERTO HINOJOSA's brother-in-law. HINOJOSA obtained office space for The Laredo Grain Company in Laredo, Texas using funds from the Virgo Commodities Corp. bank account. HINOJOSA utilized his brother-in-law only to sign documents and financial records on behalf of The Laredo Grain Company. Loans guaranteed under the SCGP were obtained by The Laredo Grain Company through CRUZ at BNP Paribas Bank from 2004 until the first default on this line of credit on or about April 4, 2005.

**D.**    **Import Companies**

        1.      Empacadora VI-BA SA de CV was a Mexican company. The by-laws of Empacadora VI-BA SA de CV reflect the ownership interest of FERNANDO

PABLO VILLARREAL CANTU'S wife, Blanca Guadalupe Ballesteros Almaguer, and children. The VI and BA represent the family names Villarreal and Ballesteros. VILLARREAL CANTU signed promissory notes on behalf of Empacadora VI-BA SA de CV for financing under USDA's SCGP.   VILLARREAL CANTU and his wife personally guaranteed loans made by Sterling Bank and backed by USDA guarantees assigned by U.S.A. Grain Co. to Sterling Bank, for exports to Empacadora VI-BA SA de CV of grain and meat from U.S.A. Grain Co.

2.       Internacional Grain SA de CV was a Mexican corporation which FERNANDO PABLO VILLARREAL CANTU had general power over. VILLARREAL CANTU signed promissory notes on behalf of Internacional Grain SA de CV for exports of grain from U.S.A. Meat and Grain Co., Inc. under USDA's SCGP.  U.S.A. Meat and Grain Co., Inc. assigned the USDA guarantee to BNP Paribas which funded draws on a line of credit up to 65% of the port value of the commodity U.S.A. Meat and Grain, Inc. claimed to have exported.

3.       Saldana y Gomez Granos y Semillas was a Mexican corporation established in June 1999 by Arturo Saldana. Saldana was an associate of FERNANDO PABLO VILLARREAL CANTU at Internacional Grain SA de CV. Virgo Commodities Corp. exported grain to Saldana y Gomez Granos y Semillas under USDA's SCGP.  The majority of grain actually exported by Virgo Commodities Corp. to Saldana y Gomez Granos y Semillas was then provided to Internacional Grain SA de CV.

4.       Central de Granos de la Laguna S.A. de C.V. was a Mexican

corporation established in 1999. BNP Paribas Bank provided financing under USDA's SCGP on behalf of Central de Granos de la Laguna S.A. de C.V. for purchases of grain from Mid-Valley Grain Co.  Loan repayments to BNP Paribas under Mid-Valley Grain Co.'s guarantee purchased from USDA were paid through accounts controlled by Internacional Grain SA de CV.

        5.      Compania Ganadera VI-BA was a Mexican corporation whose by-laws reflect the ownership interest of FERNANDO PABLO VILLARREAL CANTU'S wife and children.  The by-laws further establish that VILLARREAL CANTU was the sole administrator of Compania Ganadera VI-BA. BNP Paribas loaned Compania Ganadera VI-BA funds under USDA's SCGP for grain and cattle Alamo Feeders, Inc. claimed to have exported to Compania Ganadera VI-BA.

        6.      Granos Rolados was a Mexican entity created in 2002 by associates of FERNANDO PABLO VILLARREAL CANTU.  Loan repayments to BNP Paribas for exports of grain under USDA's SCGP by The Laredo Grain Company to Granos Rolados were repaid in large part with funds provided by Internacional Grain SA de CV.

    **E.**    **Vista Trading/Vista Exports**

        1.      Vista Trading was a division of SK Global America, Inc., which engaged in grain trading from Houston, Texas. All financial transactions related to Vista Trading grain transactions were conducted through bank accounts of SK Global. ROBERT WAYNE SEE was the Export Sales Manager at Vista Trading.  Vista Trading purchased grain on behalf of U.S.A. Grain Co., U.S.A. Meat and Grain Co., Inc., Virgo

Commodities Corp., Mid-Valley Grain Co., and Alamo Feeders, Inc.  The grain purchased from grain suppliers by Vista Trading on behalf of these five export companies was financed by SK Global, which maintained an accounts receivable for each of the exporters. Four of these exporters assigned their USDA purchased guarantees to BNP Paribas which accounted for up to 65% of the port value of the commodity claimed to have been exported. The exporter's accounts receivables were paid down with loans funded by BNP Paribas based upon an exporter's draw request to the bank. The funds from their draw requests were wire transferred by BNP Paribas to the bank account of SK Global. These funds were assigned by Vista Trading to offset a maturing debt by one of the four exporters in the books of SK Global.  As the importer repaid BNP Paribas for the loan previously funded by BNP Paribas on the exporter's earlier draw request, the additional 35% the importer owed the exporter was collected by BNP Paribas and wire transferred to SK Global's bank account.

2.      Vista Exports was established as a corporation in Texas on September 22, 2003, by JORGE EDUARDO GONZALEZ PIZANA.  Vista Exports principal place of business was Houston, Texas.  The Vista Exports office in Houston was operated by ROBERT WAYNE SEE along with his three co-workers from the former Vista Trading, all of whom were paid by FERNANDO PABLO VILLARREAL CANTU under the name Vista Grain Corporation.  On September 22, 2003, ROBERT WAYNE SEE incorporated Vista Grain Corporation in Texas. Vista Exports purchased grain on behalf of U.S.A. Grain Co., U.S.A. Meat and Grain Co., Inc., Virgo Commodities Corp.,

12

Mid-Valley Grain Co., Alamo Feeders, Inc., and The Laredo Grain Company.

## II. **THE CONSPIRACY**

From in or about 1998 and continuing through on or about December 31, 2006, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court

FERNANDO PABLO VILLARREAL CANTU
ROBERT WAYNE SEE
JOVENAL MIRANDA CRUZ
a.k.a. JERRY M. CRUZ
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA
JAVIER HERIBERTO HINOJOSA
and
JOEL VILLALON

defendants herein, did knowingly and intentionally combine, conspire, confederate and agree with each other and others known and unknown to the grand jury to commit the following offenses against the United States:

1.     To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used the United States mails and private and commercial interstate carriers for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341;

2.     To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises and to knowingly transmit and cause to be

13

transmitted by means of interstate wire communications for the purpose of

executing such scheme or artifice, in violation of Title 18, United States

Code, Section 1343;

3.      To knowingly execute and attempt to execute a scheme and artifice to

defraud financial institutions the accounts of which were insured by the

Federal Deposit Insurance Corporation (FDIC) or an agency or branch of a

foreign bank in the United States, and to obtain money, funds, and property

under the custody and control of the financial institutions, by means of false

and fraudulent pretenses, representations, and promises in violation of Title

18, United States Code, Section 1344.

F.    THE MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

1.      The defendants and their co-conspirators and agents would and did

establish six business entities in the United States to act as exporters of agricultural

commodities from the United States.

2.      The defendants and their co-conspirators and agents would and did

establish six business entities in Mexico to act as importers of agricultural commodities in

Mexico.

3.      Each of the six export companies would and did represent to USDA and to

the financial institutions that one of the six import companies was their client.

4.      FERNANDO PABLO VILLARREAL CANTU would and did exercise

14

control and authority over the import companies in Mexico and the export companies in the United States during the scheme.

5.      The defendants and their co-conspirators and agents would and did apply to participate in USDA's Supplier Credit Guarantee Program (SCGP).

6.      The defendants and their co-conspirators and agents would and did conceal from USDA their ineligibility to participate in the SCGP due to the ownership and/or control of both the U.S. export companies and the Mexican import companies by FERNANDO PABLO VILLARREAL CANTU.

7.      The defendants and their co-conspirators and agents would and did conceal from USDA the fact the grain transactions between the export companies and their respective import companies were not arms-length transactions.

8.      The defendants and their co-conspirators and agents would and did establish lines of credit through financial institutions willing to accept an assignment by the exporter of  the right to the proceeds that might become payable under the USDA's Commodity Credit Corporation's guarantee.

9.      The defendants and their co-conspirators and agents would and did provide to the financial institutions, dollar-denominated promissory notes issued from the importer in favor of the exporter.

10.     The defendants and their co-conspirators and agents would and did provide transaction-related documents required by the financial institutions.

11.     The defendants and their co-conspirators and agents would and did provide

copies of the Evidence of Export reports to USDA's Commodity Credit Corporation.

12.    The defendants and their co-conspirators and agents would and did obtain draw request fundings/loan proceeds from the financial institutions based on documents which had been altered or otherwise falsified.

13.    The defendants and their co-conspirators and agents would and did make false certifications to USDA's Commodity Credit Corporation in Evidence of Export reports.

14.    The defendants and their co-conspirators and agents would and did use the United States mail and/or interstate commercial carriers, such as Federal Express, as well as wire transmissions, such as facsimiles, to submit to USDA and to the financial institutions documents and correspondence related to SCGP and loan fundings.

15.    The defendants and their co-conspirators and agents would and did cause proceeds of the scheme, that is, the draw request fundings/loan proceeds, to be deposited and transferred into bank accounts controlled by the defendants and/or their co-conspirators, and would and did cause multiple transactions with the proceeds to conceal the nature and existence of the fraudulent scheme.

16.    The defendants and their co-conspirators and agents would and did use funds obtained from one export company's draw request/loan with a financial institution to pay off an earlier draw request/loan by one of the six export companies, which was maturing.

17.    The scheme was managed and operated by the defendants and their co-

16

conspirators utilizing a variety of business names in addition to the export and import companies including, but not limited to, Vista Trading, Vista Exports, Vista Grain, Harlingen Cattle Company, Cavalier Consulting, Aruca Group, LLC and Corvus International Corporation.

18.     The defendants and their co-conspirators and agents would and did cause kickbacks or bribes to be paid for assistance provided in obtaining loan proceeds and expanding lines of credit, and the funds were funneled through multiple bank accounts to hide and conceal the true source and nature of the funds.

19.     The defendants and their co-conspirators and agents would and did fail to repay in excess of $102,000,000.00 in USDA guaranteed loans funded by the financial institutions.

20.     The defendants and their co-conspirators and agents would and did cause USDA to pay in excess of $102,000,000.00 to the financial institutions as a result of the loan defaults.

## G. OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants and co-conspirators performed or caused the performance of one or more of the following Overt Acts, among others not described herein, in the Southern District of Texas and elsewhere:

(1)     On or about February 17, 1998, ROBERT WAYNE SEE caused a personal balance sheet for Blanca G. Ballesteros Almaguer to be sent by facsimile to Sterling

Bank.

(2)     On or about October 27, 1998, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, on behalf of Banque Nationale de Paris (now known as BNP Paribas) and JORGE EDUARDO GONZALEZ PIZANA on behalf of U.S.A. Meat and Grain Co, Inc. each signed a Master Purchase and Sale Agreement.

(3)     On or about June 7, 1999, JAVIER HERIBERTO HINOJOSA caused Articles of Incorporation for Virgo Commodities Corp. to be filed with the Texas Secretary of State.

(4)     On or about July 7, 1999, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, and JAVIER HERIBERTO HINOJOSA each signed the Master Purchase and Sale Agreement between BNP Paribas and Virgo Commodities Corp.

**VIRGO COMMODITIES CORP. LOAN #7008672**

(5)     In or about August 1999, ROBERT WAYNE SEE and JAVIER HERIBERTO HINOJOSA caused the information contained in Vista Trading Commercial Invoice 99-2429 to be copied and used in Virgo Commodities Corp. invoice 7.

(6)     In or about August 1999, ROBERT WAYNE SEE caused a Department of the Treasury North American Free Trade Agreement Certificate of Origin to be altered to reflect Virgo Commodities Corp. was the exporter of U.S. #2 or Better Sorghum to Multiservicios 2001, SA de CV, Guanajuato, Mexico.

(7)     On or about September 3, 1999, JAVIER HERIBERTO HINOJOSA

submitted a draw request to JERRY M. CRUZ at BNP Paribas in the amount of $97,158.72.

(8)     On or about September 8, 1999, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused BNP Paribas to wire transfer $93,150.92 from loan #7008672 to SK Global.

(9)     On or about November 5, 1999, JAVIER HERIBERTO HINOJOSA signed check 1090, written on the Coastal Banc account of Virgo Commodities Corp., which was payable to Corporate Creations for the incorporation of Mid-Valley Grain Co. and Harlingen Cattle Company.

(10)    On or about November 10, 1999, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, submitted a proposal to obtain approval for an uncommitted revolving line of credit in the amount of $5,000,000 for discounting receivables belonging to Mid-Valley Grain Co.

## U.S.A. MEAT AND GRAIN CO., INC. LOAN #7014124

(11)    On or about December 8, 2000, FERNANDO PABLO VILLARREAL CANTU, on behalf of Internacional Grain SA de CV, caused a Promissory Note in the amount of $3,350,616.70 to be signed.

(12)    On or about December 8, 2000, JOEL VILLALON caused to be signed U.S.A. Meat and Grain Co., Inc. invoice 1743 in the amount of $3,350,616.70 for grain sorghum sold to Internacional Grain SA de CV.

(13)    On or about December 28, 2000, JOEL VILLALON caused an advance

request to be submitted to BNP Paribas on behalf of U.S.A. Meat and Grain Co., Inc. in the amount of $2,177,900.86.

(14)   On or about March 8, 2001, JORGE EDUARDO GONZALEZ PIZANA caused to be sent by facsimile to USDA an Alamo Feeders, Inc. letter signed EDUARDO PIZANA, requesting to participate in the GSM-102 program under the Commodity Credit Corporation.

(15)   On or about April 5, 2001, JORGE EDUARDO GONZALEZ PIZANA and JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused a Master Purchase and Sale Agreement to be signed between Alamo Feeders, Inc. and BNP Paribas.

(16)   On or about July 19, 2001, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused $11,885 to be wire transferred from the Philippines, to a Washington Mutual Bank account of ROBERT WAYNE SEE.

(17)   On or about August 8, 2001, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused BNP Paribas to increase Virgo Commodities Corp.'s line of credit to $10,000,000.

(18)   On or about September 19, 2001, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused $9,520 to be wire transferred from the Philippines, to a Washington Mutual Bank account of ROBERT WAYNE SEE.

(19)   On or about November 9, 2001, JOVENAL MIRANDA CRUZ, a.k.a JERRY M. CRUZ caused BNP Paribas to increase U.S.A. Meat and Grain Co, Inc.'s line of credit to $20,000,000.

(20)    On or about November 21, 2001, ROBERT WAYNE SEE caused to be filed in the Assumed Name Records of Harris County, Texas, an assumed name record for Cavalier Consulting.

(21)    On or about February 1, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused Texas Articles of Organization of a Limited Liability Company to be filed for Aruca Group, LLC.

## MID-VALLEY GRAIN CO. LOANS #200813 & #200815

(22)    On or about June 5, 2002, ROBERT WAYNE SEE caused Phytosanitary Certificate FPC6505448 to be purchased from the USDA Animal and Plant Health Inspection Service Plant Protection and Quarantine in Laredo, Texas, for Mid-Valley Grain Co.

(23)    On or about June 5, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused an Assignment Notification for USDA guarantee GSM-102-204561 to be signed.

(24)    On or about June 17, 2002, ROBERT WAYNE SEE caused Phytosanitary Certificates FFPC6505930 and FPC6505932 to be purchased from the USDA Animal and Plant Health Inspection Service Plant Protection and Quarantine in Laredo, Texas, for exporter Mid-Valley Grain Co.

(25)    On or about June 25, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused the proceeds of loan #200813, approximately $481,909.97 to be wire transferred to the bank account of SK Global.

(26)    On or about June 26, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused the proceeds of loan #200815, approximately $624,567.22 to be wire transferred to the bank account of SK Global.

(27)    On or about June 17, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, proposed BNP Paribas increase Virgo Commodities Corp.'s line of credit to $20,000,000.

## VIRGO COMMODITIES CORP. LOAN # 200811

(28)    On or about June 17, 2002, ROBERT WAYNE SEE caused a Phytosanitary Certificate FPC6505931 to be purchased from the USDA Animal and Plant Health Inspection Service Plant Protection and Quarantine in Laredo, Texas, for exporter Virgo Commodities Corp.

(29)    On or about June 21, 2002, JAVIER HERIBERTO HINOJOSA caused to be sent to JERRY M. CRUZ at BNP Paribas a Federal Express package containing a draw request and Pedimento 02 17 3683 2003227.

(30)    On or about June 21, 2002, JAVIER HERIBERTO HINOJOSA  sent by facsimile from Brownsville, Texas, to USDA in Washington, D.C., an Evidence of Export report claiming Virgo Commodities Corp. exported 2,435.045 metric tons of #2 yellow corn.

(31)    On or about June 24, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ,  caused loan proceeds from draw request #200811, in the amount of $169,970.69, to be wire transferred to the bank account of SK Global.

## U.S.A. MEAT AND GRAIN CO., INC. LOAN #200822

(32)    On or about June 4, 2002, JOEL VILLALON caused an application for USDA guarantee GSM-102-204708 to be signed on behalf of U.S.A. Meat & Grain Co., Inc.

(33)    On or about June 5, 2002, JOEL VILLALON and JOVENAL CRUZ each signed an Assignment Notification for USDA guarantee GSM-102-204708.

(34)    On or about June 14, 2002, JOEL VILLALON caused to be signed U.S.A. Meat and Grain Co., Inc. invoice 2548 for a shipment of 54 rail cars of yellow soybeans to Internacional Grain SA de CV.

(35)    On or about June 17, 2002, ROBERT WAYNE SEE caused Phytosanitary Certificate FPC6505933 to be purchased from the USDA Animal and Plant Health Inspection Service Plant Protection and Quarantine in Laredo, Texas, for exporter U.S.A. Meat and Grain Co., Inc.

(36)    On or about June 18, 2002, FERNANDO PABLO VILLARREAL CANTU signed a promissory note on behalf Internacional Grain SA de CV in the amount of $1,028,416.80.

(37)    On or about June 18, 2002, JOEL VILLALON caused to be sent by facsimile to USDA, an Evidence of Export report.

(38)    On or about June 19, 2002, JOEL VILLALON submitted U.S.A. Meat and Grain Co., Inc. advance  request for $668,470.92 to JOVENAL MIRANDA CRUZ, a.k.a JERRY M. CRUZ at BNP Paribas.

(39)    On or about June 28, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused the wire transfer of approximately $652,594.73 of the loan proceeds from U.S.A. Meat and Grain Co., Inc.'s advance request to the bank account of SK Global America.

(40)    On or about July 5, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ,  caused to be provided to JORGE EDUARDO GONZALEZ PIZANA a bill for the fundings by BNP Paribas of several advance or draw requests by U.S.A. Meat and Grain Co., Inc., Mid-Valley Grain Co., Alamo Feeders, Inc. and Virgo Commodities Corp. in June 2002.

(41)    On or about July 22, 2002, JOEL VILLALON caused $180,000 to be wire transferred from the bank account of U.S.A. Meat and Grain Co., Inc. at Wells Fargo to the bank account of Aruca Group, LLC at Bank One.

(42)    On or about July 22, 2002, JOEL VILLALON prepared a daily bank report for FERNANDO PABLO VILLARREAL CANTU, which included the transfer of $180,000 to Aruca Group, LLC.

(43)    On or about July 24, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused a wire transfer of $11,943.04 from the bank account of Aruca Group, LLC at Bank One to the bank account of Cavalier Consulting at Washington Mutual Bank.

(44)    On or about October 22, 2002, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused BNP Paribas to increase Mid-Valley Grain Co.'s line of credit

24

to $20,000,000.

(45)   On or about February 4, 2003, JOVENAL MIRANDA CRUZ, a.k.a.

JERRY M. CRUZ, caused a memo to the BNP Paribas file to be generated which stated

he had met with EDUARDO PIZANA of Alamo Feeders, Inc., Reynold Trevino of

Compania Ganadera and WAYNE SEE of Vista Trading to discuss their cattle and grain

business as well as the request to increase the existing credit line to $20,000,000.00.

## ALAMO FEEDERS, INC. LOAN # 201019

(46)   On or about February 25, 2003, ROBERT WAYNE SEE caused an

employee of The Scoular Company to send to him by facsimile, a railroad car and weight

list along with a list of grade results for a shipment of yellow corn being exported by The

Scoular Company to Almidones Mexicanos, SA de CV in Mexico.

(47)   On or about March 3, 2003, ROBERT WAYNE SEE and JORGE

EDUARDO GONZALEZ PIZANA caused to be purchased Phytosanitary Certificate

FPC7052228 from the USDA Animal and Plant Health Inspection Service in Laredo,

Texas, for exporter Alamo Feeders, Inc.

(48)   On or about March 4, 2003, ROBERT WAYNE SEE caused SK Global

America to wire transfer approximately  $1,354,568.95 to the Texas State Bank account

of Internacional Grain SA de CV.

(49)   On or about March 4, 2003, ROBERT WAYNE SEE caused Vista Trading

Contract Confirmation #03-S2968 to be generated regarding a sale of #2 yellow corn to

Alamo Feeders, Inc.

(50)   On or about March 4, 2003, JORGE EDUARDO GONZALEZ PIZANA a.k.a. EDUARDO PIZANA caused a draw request in the amount of $880,469.82 against the Master Purchase and Sale Agreement between Alamo Feeders, Inc. and BNP Paribas to be submitted to JERRY M. CRUZ.

(51)   On or about March 4, 2003, JORGE EDUARDO GONZALEZ PIZANA and JOVENAL MIRANDA CRUZ, a.k.a JERRY M. CRUZ caused an Evidence of Export Report to be sent by facsimile from Alamo Feeders, Inc. to USDA's Foreign Agricultural Service.

(52)   On or about March 5, 2003, JOVENAL MIRANDA CRUZ, a.k.a JERRY M. CRUZ caused $861,655.89 to be wire transferred to the bank account of SK Global America, Inc. from the funding of draw request #201019.

(53)   On or about March 10, 2003, ROBERT WAYNE SEE caused to be deposited into Cavalier Consulting's account at Washington Mutual Bank check 1086 drawn on Aruca Group, LLC's account at Bank One in the amount of $40,953.35.

(54)   On or about April 8, 2003, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused the line of credit for Alamo Feeders, Inc. at BNP Paribas to be increased to $20,000,000.

(55)   On or about June 25, 2003, ROBERT WAYNE SEE caused Articles of Incorporation for Corvus International Corporation to be filed in the records of the Texas Secretary of State.

(56)   On or about September 15, 2003, JOVENAL MIRANDA CRUZ, a.k.a

JERRY M. CRUZ caused BNP Paribas to increase the line of credit to U.S.A. Meat and Grain Co, Inc. to $25,000,000.

(57)   On or about September 15, 2003, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused BNP Paribas to increase the line of credit to Alamo Feeders, Inc. to $25,000,000.

(58)   On or about September 15, 2003, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, caused BNP Paribas to increase the line of credit to Mid-Valley Grain Co. to $25,000,000.

(59)   On or about September 22, 2003, ROBERT WAYNE SEE caused Articles of Incorporation for Vista Grain Corporation to be filed with the Texas Secretary of State.

(60)   On or about September 22, 2003, JORGE EDUARDO GONZALEZ caused Articles of Incorporation for Vista Exports Corporation to be filed with the Texas Secretary of State.

(61)   On or about February 19, 2004, ROBERT WAYNE SEE caused Wells Fargo Bank to establish wire transfer services for account XXX4546 in the name Vista Grain Corporation.

(62)   On or about March 1, 2004, ROBERT WAYNE SEE and FERNANDO PABLO VILLARREAL CANTU caused a Professional Services Contract between Inter-Grain SA de CV and Vista Grain Corporation to be approved which provided that Inter-Grain SA de CV would pay Vista Grain Corporation a monthly fee of $76,550.

(63)   On or about June 21, 2004, ROBERT WAYNE SEE caused to be signed a

Vista Exports Corporation letter addressed to JERRY M. CRUZ, Vice President BNP

Paribas, concerning their new corporation, Vista Exports Corporation.

(64)    On or about August 4, 2004,  JOVENAL MIRANDA CRUZ, a.k.a. JERRY

M. CRUZ, caused a memo to be prepared regarding a meeting with ROBERT WAYNE

SEE of Vista Exports Corporation and Marco A. Rodriguez, the President of The Laredo

Grain Company.

(65)    On or about August 9, 2004, JAVIER HERIBERTO HINOJOSA caused

Articles of Incorporation for The Laredo Grain Company to be filed with the Texas

Secretary of State.

## THE LAREDO GRAIN COMPANY LOAN #201724

(66)    On or about October 14, 2004, ROBERT WAYNE SEE caused to be sent

by facsimile Phytosanitary Certificate FPC7592643 and Pedimento 04 24 3613 4006132.

(67)    On or about October 14, 2004, ROBERT WAYNE SEE caused to be sent

by facsimile Phytosanitary Certificate FPC7592641 and Pedimento 04 24 3630 4011604.

(68)    On or about October 26, 2004, JAVIER HERIBERTO HINOJOSA caused

an Evidence of Export report to be sent by facsimile from Texas to USDA in Washington,

D.C. regarding an export of #2 yellow corn by The Laredo Grain Company on September

22, 2004.

(69)    On or about October 27, 2004, JOVENAL MIRANDA CRUZ, a.k.a.

JERRY M. CRUZ, signed a Master Purchase and Sale Agreement on behalf of BNP

Paribas with The Laredo Grain Company.

(70)   On or about November 19, 2004, JOVENAL MIRANDA CRUZ a.k.a. JERRY M. CRUZ caused the funding of The Laredo Grain Company draw request #201724, in the amount of $746,643.36, to be wire transferred to the account of Vista Exports at Wells Fargo Bank.

(71)   On or about November 19, 2004, JORGE EDUARDO GONZALEZ caused $147,462.96 to be wire transferred from the Alamo Feeders, Inc. account at Wells Fargo Bank to Hinojosa Engine Rebuilders, Inc. account at Texas State Bank.

(72)   On or about November 19, 2004, JAVIER HERIBERTO HINOJOSA caused to be signed check 1663 written on the account of Hinojosa Engine Rebuilders, Inc. and payable to JORGE E. GONZALEZ in the amount of $48,879.44.

(73)   On or about November 23, 2004, ROBERT WAYNE SEE caused to be deposited into account XXX4990 at Washington Mutual Bank check 1664 written on the account of Hinojosa Engine Rebuilders, Inc. in the amount of $48,879.44.

**U.S.A. GRAIN CO. LOAN #91258893/Funding #304**

(74)   On or about February 1, 2005, FERNANDO PABLO VILLARREAL CANTU caused a representative of U.S.A. Grain Co. to apply for a USDA guarantee for soybeans with a port value of $2,486,000.00.

(75)   On or about February 4, 2005, FERNANDO PABLO VILLARREAL CANTU caused to be signed a Promissory Note on behalf of Empacadora VI-BA SA de CV in the amount of $2,486,000.00.

(76)    On or about February 18, 2005, ROBERT WAYNE SEE caused  Mexican Pedimento 05 27 3613 5000184 and USDA Phytosanitary Certificate FPC7572244 to be sent by facsimile from Vista Exports Corporation to U.S.A. Grain Co.

(77)    On or about February 18, 2005, ROBERT WAYNE SEE caused Mexican Pedimento 05 27 3469 5000326 and USDA Phytosanitary Certificate FPC7572247 to be sent by facsimile from Vista Exports Corporation to U.S.A. Grain Co.

(78)    On or about March 11, 2005, FERNANDO PABLO VILLARREAL CANTU caused an Evidence of Export report to be sent by facsimile from Brownsville, Texas, to USDA in Washington, D.C.

(79)    On or about August 3, 2005, FERNANDO PABLO VILLARREAL CANTU, caused Empacadora VI-BA SA de CV to default on the payment of Sterling Bank loan #91258893/Funding #304.

(80)    On or about November 7, 2005, JAVIER HERIBERTO HINOJOSA caused a Virgo Commodities Corp. Notice of Default to be mailed by certified United States mail to USDA's Director of CCC Operations.

(81)    On or about February 9, 2006, JAVIER HERIBERTO HINOJOSA caused a Virgo Commodities Corp. letter to be mailed through the United States Postal Service to USDA representing the transactions at issue were all completed shipments.

All in violation in Title 18, United States Code, Section 1349.

**MAIL FRAUD COUNT**

## COUNT TWO

A.    The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.    On or about November 7, 2005 in the Southern District of Texas, the defendants,

JAVIER HERIBERTO HINOJOSA
and
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA

aided and abetted by each other and others known and unknown to the grand jury, did knowingly devise and intend to devise a scheme to defraud and to obtain money and property from the United States Department of Agriculture by means of materially false and fraudulent pretenses, representations and promises, and material omissions, and for the purpose of executing the scheme, and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service and caused to be deposited and sent or delivered according to the directions thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, a letter from Virgo Commodities Corp. addressed to United States Department of Agriculture giving notice of default.

All in violation of Title 18, United States Code, Sections 1341 and 2.

**WIRE FRAUD COUNTS**

## COUNTS THREE AND FOUR

A.     The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.     On or about the following dates, in the Southern District of Texas and elsewhere, the defendants named below, aided and abetted by each other and others known and unknown to the grand jury, did knowingly devise, intend to devise, and participate in a scheme to defraud and to obtain money and property from by means of materially false and fraudulent pretenses, representations and promises, and material omissions, which scheme is set forth in section II subsection F of Count One of the indictment.

C.     In each of counts Three and Four and on the dates alleged below, in the Southern District of Texas, the defendants, aided and abetted by one another and others known and unknown to the grand jury, for the purpose of executing, and attempting to execute, the scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations did cause to be transmitted in interstate commerce, by means of a wire communication, that is the wire transfer of the funds described below:

| COUNT | DATE | DEFENDANTS | TRANSMISSION DESCRIPTION |
|-------|------|------------|--------------------------|
| THREE | April 1, 2005 | FERNANDO PABLO VILLARREAL CANTU JORGE EDUARDO GONZALEZ PIZANA, a.k.a. EDUARDO PIZANA and JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ | Wire transfer of $815,130.58 from BNP Paribas for loan #201847 to the Wells Fargo Bank account of Vista Exports |
| FOUR | April 15, 2005 | FERNANDO PABLO VILLARREAL CANTU and ROBERT WAYNE SEE | Wire transfer of $76,550 from Internacional Grain SA de CV's account at Bancomer to Vista Grain's account at Wells Fargo Bank |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FALSE STATEMENT TO A BANK COUNTS

### COUNTS FIVE THROUGH NINE

A.    The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.    On or about the following dates, in the Southern District of Texas and elsewhere, the defendants,

FERNANDO PABLO VILLARREAL CANTU
ROBERT WAYNE SEE
JOVENAL MIRANDA CRUZ

33

a.k.a. JERRY M. CRUZ
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA
JAVIER HERIBERTO HINOJOSA
and
JOEL VILLALON

aided and abetted by each other and others known and unknown to the grand jury, did

knowingly make a false statement for the purpose of influencing the action of BNP

Paribas, a branch or agency of a foreign bank, in connection with advance or draw

requests for funds on lines of credit as set out below:

| COUNT | DATE | TRANSACTION DESCRIPTION |
|-------|------|--------------------------|
| FIVE | June 19, 2002 | U.S.A. Meat and Grain Co., Inc. advance request #200822 included a falsified Pedimento, number 02 17 3683 2003230 |
| SIX | June 20, 2002 | Mid-Valley Grain Co. draw request #200813 included a falsified Pedimento, number 02 17 3683 2003061 |
| SEVEN | June 21, 2002 | Virgo Commodities Corp. draw request #200811 included a falsified Pedimento, number 02 17 3683 2003227 |
| EIGHT | March 4, 2003 | Alamo Feeders, Inc. draw request #201019 included falsified Pedimento numbers 03 17 3683 3000986 and 03 17 3683 3000987 |
| NINE | October 14, 2004 | The Laredo Grain Company draw request #201724 included falsified Pedimento numbers 04 24 3613 4006132 and 04 24 3630 4011604 and falsified Phytosanitary Certificate FPC7592643 and FPC7592641 |

All in violation of Title 18, United States Code, Sections 1014 and 2.

**FINANCIAL INSTITUTION BRIBERY COUNTS**

**<u>COUNTS TEN THROUGH TWELVE</u>**

A.     The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.     In each of counts Ten through Twelve and on the dates alleged below, in the Southern District of Texas,

FERNANDO PABLO VILLARREAL CANTU
ROBERT WAYNE SEE
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA
JAVIER HERIBERTO HINOJOSA
and
JOEL VILLALON

the Defendants, aided and abetted by each other and others known and unknown to the Grand Jury, corruptly gave, offered and promised something of value, that is funds as described below, to JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, an officer and employee of BNP Paribas in Houston, Texas, a branch or agency of a foreign bank, with the intent to influence and reward such person in connection with a transaction of that institution concerning the funding of advance or draw requests on lines of credit established at BNP Paribas:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| TEN | October 3, 2001 | Payment of approximately $40,000 to the Klein Bank and Trust account of BST Consulting |

| COUNT | DATE | TRANSACTION |
|---|---|---|
| ELEVEN | July 22, 2002 | Payment of approximately $157,072.97 to the JP Morgan Chase Bank account of Aruca Group, LLC |
| TWELVE | August 8, 2002 | Payment of approximately $96,691.44 to the JP Morgan Chase Bank account of Aruca Group, LLC |

All in violation of Title 18, United States Code, Sections 215 and 2.

## COUNTS THIRTEEN THROUGH FIFTEEN

A.     The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.     In each of counts Thirteen through Fifteen and on the dates alleged below, in the Southern District of Texas, the Defendant, JOVENAL MIRANDA CRUZ, a.k.a. JERRY M. CRUZ, aided and abetted by others known and unknown to the Grand Jury, while an officer and employee of BNP Paribas in Houston, Texas, a branch or agency of a foreign bank, did corruptly solicit and demand for the benefit of himself and another person and accepted and agreed to accept a thing of value, that is funds as described below, intending to be influenced and rewarded in connection with a transaction of BNP Paribas concerning the funding of advance or draw requests on lines of credit established at BNP Paribas:

36

| COUNT | DATE | TRANSACTION |
|---|---|---|
| THIRTEEN | October 3, 2001 | Payment of approximately $40,000 to the Klein Bank and Trust account of BST Consulting |
| FOURTEEN | July 22, 2002 | Payment of approximately $157,072.97 to the JP Morgan Chase Bank account of Aruca Group, LLC. |
| FIFTEEN | August 8, 2002 | Payment of approximately $96,691.44 to the JP Morgan Chase Bank account of Aruca Group, LLC. |

All in violation of Title 18, United States Code, Sections 215 and 2.

**MONEY LAUNDERING CONSPIRACY**

**COUNT SIXTEEN**

A.    The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in section I subsections A through E and section II subsection F as set out in Count One of the indictment.

B.    From in or about 1998 and continuing through on or about December 31, 2006, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this Court

FERNANDO PABLO VILLARREAL CANTU
ROBERT WAYNE SEE
JOVENAL MIRANDA CRUZ
a.k.a. JERRY M. CRUZ
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA
JAVIER HERIBERTO HINOJOSA
and
JOEL VILLALON

defendants herein, did unlawfully, knowingly and intentionally combine, conspire,

37

confederate and agree with each other and others known and unknown to the grand jury,

to commit the following offenses against the United States in violation of Title 18, United

States Code, Sections 1956 and 1957, to wit:

1.     To knowingly and willfully conduct and attempt to conduct a financial

transaction, the activities of which affect interstate commerce with the proceeds of a

specified unlawful activity, that is, mail fraud, a violation of Title 18, United States Code,

Section 1341; wire fraud, a violation of Title 18, United States Code, Section 1343; bank

fraud, a violation of Title 18, United States Code, Section 1344; false statements to a

bank, in violation of Title 18, United States Code, Section 1014; and financial institution

bribery, a violation of Title 18, United States Code, Section 215 knowing that the

transaction was designed in whole and in part to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of said specified unlawful activity and that

while conducting and attempting to conduct such financial transaction knew that the

property involved in the financial transaction, that is funds and monetary instruments,

represented the proceeds of some form of unlawful activity in violation of Title 18,

United States Code, Sections 1956(a)(1)(B)(I) .

2.     To knowingly engage in and attempt to engage in monetary

transactions within the United States in criminally derived  property that is of a value

greater than $10,000 and is derived  from specified unlawful activity, that is, mail fraud,

wire fraud, bank fraud, false statements to a bank, and financial institution bribery in

violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Sections 1956(h).

## NOTICE OF FORFEITURE

The United States gives notice to the defendants

FERNANDO PABLO VILLARREAL CANTU (Counts 1, 3-12, 16),
ROBERT WAYNE SEE (Counts 1, 4-12, 16),
JOVENAL MIRANDA CRUZ
a.k.a. JERRY M. CRUZ (Counts 1, 3, 5-9, 13-16),
JORGE EDUARDO GONZALEZ PIZANA
a.k.a. EDUARDO PIZANA (Counts 1-3, 5-12, 16),
JAVIER HERIBERTO HINOJOSA (Counts 1, 2, 5-12, 16) and
JOEL VILLALON (Counts 1, 5-12, 16)

that property is subject to forfeiture as follows:

## 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), defendants are notified that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1349, or of a violation of Title 18, United States Code, Sections 215, 1014, 1341 or 1343, all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

## 18 U.S.C. § 982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), defendants are notified that upon conviction of a conspiracy in violation of Title 18, United States Code, Section 1956(h), all property, real or personal, involved in the money laundering conspiracy or traceable to such property, is subject to forfeiture.

## Money Judgment

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable.

## Property Subject to Forfeiture

Defendants are notified that the property subject to forfeiture includes, but is not limited to, the following property:

(1) at least $102 million in United States dollars.

(2) real property in Brownsville, Texas, titled in the name of Jorge Gonzalez and wife Lucia Gonzalez, and legally described as follows:

> Lot Thirteen (13), Block One (1), Garden View, Cameron County, Texas, according to the map thereof recorded in Cabinet 1, Pages 1874-A and 1874-B, Map Records, Cameron County, Texas.

(3) real property in Brownsville, Texas, titled in the name of Javier H. Hinojosa and wife Sandra R. Hinojosa, and legally described as follows:

> Lot 1, Block 1, FOX HOLLOW SUBDIVISION in Cameron County, Texas, according to map thereof recorded in Cabinet 1, Page 1692-B and 1693-A of the map records, Cameron County, Texas, and amended in Cabinet 1, Page 1749-A and B, Map Records, Cameron County, Texas.

(4) $3,495,052.63 in U.S. dollars seized in or about February 2009 from a Zions First National Bank account in the name of VCC Group LLC, a company established by HINOJOSA.

## Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

40

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE
FOREPERSON OF THE GRAND JURY

José Angel Moreno
United States Attorney

By:

Melissa J. Annis
Assistant United States Attorney

41